JOHN S. LEONARDO
United States Attorney
District of Arizona
LISA E. JENNIS
Email: lisa.jennis@usdoj.gov
BILL C. SOLOMON
Arizona State Bar No. 020012
Email: william.solomon@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: william.solomon@usdoj.gov
Attorneys for Plaintiff

FILED ___ LODGED ✓
RECEIVED ___ COPY ___
OCT 1 4 2016
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

FILED ✓ LODGED ___
RECEIVED ___ COPY ___
MAR - 8 2017
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

CR-16-1266-PHX-DJH

WI-16-0568-PHX-DJH (DKD)

United States of America,

Plaintiff,

vs.

Sharmarke Yusuf Ahmed,

Defendant.

**PLEA AGREEMENT**

Plaintiff, United States of America, and the defendant, Sharmarke Yusuf Ahmed, hereby agree to dispose of this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to Count One of the information charging the defendant with a violation of 18 United States Code (U.S.C.) § 1960, Operation of an Unlicensed Money Transmitting Business, a Class D felony offense.

2. **MAXIMUM PENALTIES**

a.     A violation of 18 U.S.C. § 1960, is punishable by a maximum fine of $250,000.00, a maximum term of imprisonment of 5 years, or both, and a term of supervised release of 3 years. A maximum term of probation is five years.

b.     According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

1        (1)     make restitution to any victim of the offense pursuant to 18 U.S.C.
§ 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

        (2)     pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

        (3)     serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

        (4)     pay upon conviction a $100.00 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

     c.     The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

**3.**     <u>**AGREEMENTS REGARDING SENTENCING**</u>

     a.     Stipulation. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant shall be sentenced to a five-year term of probation.

     b.     Assets and Financial Responsibility. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation

Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose.  Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

c.      Acceptance of Responsibility.  If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a).  If the defendant has an offense level of 16 or more, the United States will recommend an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

**4.      AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a.      This office shall not prosecute the defendant for any offenses committed by the defendant, and known by the United States, in connection with his operation of an unlicensed money transmitting business and his submission of false immigration documentation.

b.      This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5.      COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a.      If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b.      If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and

1  any charges that have been dismissed because of this plea agreement shall automatically

2  be reinstated.  In such event, the defendant waives any and all objections, motions, and

3  defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional

4  restrictions in bringing later charges or proceedings.  The defendant understands that any

5  statements made at the time of the defendant's change of plea or sentencing may be used

6  against the defendant in any subsequent hearing, trial, or proceeding subject to the

7  limitations of Fed. R. Evid. 410.

8  6.    **WAIVER OF DEFENSES AND APPEAL RIGHTS**

9       The defendant waives (1) any and all motions, defenses, probable cause

10  determinations, and objections that the defendant could assert to the information; and (2)

11  any right to file an appeal, any collateral attack, and any other writ or motion that challenges

12  the conviction, an order of restitution or forfeiture, the entry of judgment against the

13  defendant, or any aspect of the defendant's sentence, including the manner in which the

14  sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742

15  (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions),

16  and any right to file a motion for modification of sentence, including under 18 U.S.C. §

17  3582(c).  The defendant hereby acknowledges that he has accepted this Agreement and

18  decided to plead guilty because he is in fact guilty.  By entering this plea of guilty, the

19  defendant waives any and all right to withdraw his plea or to attack his conviction, either

20  on direct appeal or collaterally, on the ground that the United States has failed to produce

21  any discovery material, Jencks Act material, exculpatory material pursuant to *Brady v.*

22  *Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence

23  of the defendant, and impeachment material pursuant to *Giglio v. United States*, 405 U.S.

24  150 (1972), that has not already been produced as of the date of the signing of this

25  Agreement.  This waiver shall result in the dismissal of any appeal, collateral attack, or

26  other motion the defendant might file challenging the conviction, order of restitution or

27  forfeiture, or sentence in this case.  This waiver shall not be construed to bar an otherwise-

28  preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as

- 4 -

that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

**7.     DISCLOSURE OF INFORMATION**

    a.     The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

    b.     Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

    c.     The defendant shall cooperate fully with the U.S. Probation Office.  Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

        (1)     criminal convictions, history of drug abuse, and mental illness; and

        (2)     financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

**8.     FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

    a.     Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture.  Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule).  If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

9.   **ELEMENTS**

**Operation of an Unlicensed Money Transmitting Business**

Beginning on or about June 1, 2011, and continuing through at least January 2014, in the District of Arizona and elsewhere:

1.     The defendant knowingly conducted, controlled, managed, supervised, or directed all or part of a money transmitting business that affects interstate or foreign commerce;

2.     At the time the defendant conducted, controlled, managed, supervised, or directed the money transmitting business, the business was being operated without an appropriate money transmitting license;

3.     The operation of a money transmitting business without a license is punishable as a misdemeanor or a felony offense in Arizona.

10.   **FACTUAL BASIS**

a.     The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

From 2009 to May 31, 2011, I contracted with North American Money Transfer ("NAMT"), an Arizona licensed money transmitter, to operate its money transmitting business as its authorized delegate at its Phoenix office located at 5054 E. McDowell Road.  On May 31, 2011, I entered into a termination agreement with NAMT, through which my ability to operate a money transmitting business in Arizona as an authorized delegate was terminated.  Despite being terminated as NAMT's authorized delegate, I knew that my name remained on NAMT's Arizona bank account as the primary account holder.  Between June 1, 2011, through January 2014, I continued to engage in the business of receiving money for transmission and transmitting money on behalf of the public to locations outside of the United States, primarily Somalia, Kenya, and Dubai.  Based on training I had received as an authorized delegate, I knew that it was unlawful in Arizona to receive money for

- 6 -

1   transmission, or to transmit money, without being a licensee or an authorized

2   delegate of a licensee. I know that, or I have been told that, operating a money

3   transmitting business in Arizona is punishable as a felony.

4       b.     The defendant shall swear under oath to the accuracy of this statement and,

5   if the defendant should be called upon to testify about this matter in the future, any

6   intentional material inconsistencies in the defendant's testimony may subject the defendant

7   to additional penalties for perjury or false swearing, which may be enforced by the United

8   States under this agreement.

9                  **APPROVAL AND ACCEPTANCE OF THE DEFENDANT**

10      I have read the entire plea agreement with the assistance of my attorney. I

11   understand each of its provisions and I voluntarily agree to it.

12      I have discussed the case and my constitutional and other rights with my attorney.

13   I understand that by entering my plea of guilty I shall waive my rights to plead not guilty,

14   to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to

15   present evidence in my defense, to remain silent and refuse to be a witness against myself

16   by asserting my privilege against self-incrimination, all with the assistance of counsel, and

17   to be presumed innocent until proven guilty beyond a reasonable doubt.

18      I agree to enter my guilty plea as indicated above on the terms and conditions set

19   forth in this agreement.

20      I have been advised by my attorney of the nature of the charges to which I am

21   entering my guilty plea. I have further been advised by my attorney of the nature and range

22   of the possible sentence and that my ultimate sentence shall be determined by the Court

23   after consideration of the advisory Sentencing Guidelines.

24      My guilty plea is not the result of force, threats, assurances, or promises, other than

25   the promises contained in this agreement. I voluntarily agree to the provisions of this

26   agreement and I agree to be bound according to its provisions.

27      I understand that if I am granted probation or placed on supervised release by the

28   Court, the terms and conditions of such probation/supervised release are subject to

modification at any time.  I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea.   Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement.  I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.



_OCt 14, 2016_
Date

SHARMARKE YUSUF AHMED
Defendant

### APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible.  I have further discussed the concept of the advisory Sentencing Guidelines with the defendant.  No

assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

October 14, 2016
_____
Date

_____
A. MELVIN MCDONALD
Attorney for Defendant

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

JOHN S. LEONARDO
United States Attorney
District of Arizona

10/14/16
_____
Date

_____
LISA E. JENNIS
BILL C. SOLOMON
Assistant U.S. Attorneys

## ACCEPTANCE BY THE COURT

March 8, 2017
_____
Date

_____
HONORABLE DIANE J. HUMETEWA
United States District Judge

- 9 -