A. Melvin McDonald, Bar #002298
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1700
Fax: (602) 200-7847
Melmcdonald2@gmail.com

Attorneys for Defendant Sharmarke Ahmed

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| United States of America, | NO. CR-16-1266-PHX-DJH |
|---|---|
| Plaintiff, | **Response to United States' Motion for an Order Modifying Defendant's Conditions of Probation** |
| v. | |
| Sharmarke Yusuf Ahmed, | |
| Defendant. | |

Defendant Sharmarke Ahmed, by and through undersigned counsel, and respectfully opposes the Government's motion seeking an order modifying defendant's conditions of release and the proposed Order submitted therewith. Mr. Ahmed objects to surrendering all travel documents, including his passport, that he may not travel internationally for the remainder of his probation, and to providing itemized accountings since January 1, 2019, all of which objections are more set forth in this response. This response is supported by the attached Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    HISTORY**

In 2016, the FBI and the U.S. Attorney's Office joined together in an investigation into financial activities of defendant Ahmed relating to his employment at North American Money Transfer. Even though he terminated his employment with North American Money Transfer in 2011, Sharmarke continued to work there and allowed his

7758920.1

1 name to remain on their banking records.  In short, he was transmitting money without a
2 license.  The defendant was adamant, at the threshold of this investigation, that he was
3 not knowingly sending funds outside of the country to terrorist groups.

4 Before any plea was offered, the Government requested, and was granted, a
5 free talk.  That free talk was held over three years ago, on July 12, 2016.  Defense counsel
6 accompanied Mr. Ahmed to that meeting.  Assistant U.S. Attorneys Lisa Jennis and Bill
7 Sullivan jointly represented the U.S. Attorney's Office at that meeting.  There were two
8 FBI agents present who actively participated in questioning.  The meeting lasted for
9 approximately four hours.  Ahmed openly and candidly answered each of the
10 Government's questions to the best of his ability.  He answered, to the best of his ability,
11 all questions relating to money transfers to Africa.

12 Later in 2016, some two months after the free talk, the Government
13 extended its plea offer to a single violation of 18 U.S.C. §1960, operation of an unlicensed
14 money transmitting business, a class D felony offense.  As part of the agreement, it was
15 stipulated that Mr. Ahmed receive a five-year probationary sentence.  Paragraph 3B of the
16 agreement required Mr. Ahmed to "make a full accounting of all assets in which the
17 defendant has any legal or equitable image interest.  The defendant shall not (and shall not
18 aid or abet any other party to) sell, hide, waste, spend or transfer any such assets or
19 property before sentencing without the prior approval of the United States."  The plea was
20 entered and accepted of record.  Five months later, on March 8, 2017, the defendant was
21 sentenced to the stipulated term.

22 The court, at sentencing, imposed special conditions to his supervised
23 probation terms.  Under these special conditions, Mr. Ahmed was required to do the
24 following:

> 1) You shall submit your person, property, house, residence, vehicle, papers, computers as defined in 18 U.S.C. 1030(e)(1), other electronic communications or data storage devices or media, or office, to a search conducted by a probation officer.  Failure to submit to a search may be grounds for revocation of release.  You shall warn other occupants that the premises may be subject to searches

pursuant to this condition.

   2) You shall provide all financial documentation requested by the probation office.

   3) You are prohibited from making major purchases, incurring new financial obligations, or entering into any financial contracts without the prior approval of the probation officer.

The Government had over two months to review Mr. Ahmed's information for inaccuracies prior to going forward with the plea. Any suggestion that he was funding terrorist organizations like Al Shabab in his homeland of Somalia was absurd. Two of his brothers had been killed by terrorists connected with Al Shabab in Somalia.

The Court at sentencing granted Mr. Ahmed authority to keep his passport:

   THE COURT: It's a bit of an administrative issue as well. So I guess what we will do, Mr. Ahmed, is given the Court's imposition of sentence and what it has stated on the record, I am going to permit you to keep your passport.

(Sentencing Transcript, page 27, lines 9 to 12, March 8, 2017).

The Court later approved his travel out of country to Mecca, June 1, 2017. As of this date, Mr. Ahmed has completed 28 months of probation and, taking into account issues preceding the plea, has been under scrutiny by Government for well over three years.

The Court welcomed and encouraged Mr. Ahmed to pursue his business objectives, but clearly provided a requirement that he inform probation officers of expenditures and investments. Supervision was transferred to Ohio, and Federal Probation Officer LeVita Grissom was assigned to oversee his supervision.

In the 2-1/2 years on probation, the defendant has been an exemplary probationer. He has meticulously reported to Probation Officer Grissom all financial transactions and business investments, taking no action without her approval. He has provided her all tax information, investment information, and business acquisition information. The business venture in the Philippines was taken only after consulting and obtaining approval from Ms. Grissom. Governmental approvals were provided to her as

part of the court mandated review process. Even though he possessed a passport, he has always sought permission from the Court before leaving the country. In a second request over a year ago, the Court denied travel and Mr. Ahmed respected the Court's order and did not travel. He has been vigilant in earning the Court's trust hoping that someday, before the expiration of five years, he can earn an early discharge from probation.

## II. THE PHILIPPINES REQUEST

On June 14, 2019, counsel filed a motion seeking permission for Mr. Ahmed to travel to the Philippines, exclusive for business purposes. The motion provided the Court with all of the business information about his business, the location where he was staying, the period he would be there and all other relevant information including Philippine government approvals. On the date of that request, there was not a single negative write-up by Ms. Grissom nor anyone in the probation department regarding Mr. Ahmed's exemplary 2-1/2 years of compliance on probation.

It is clear from the Government's motion that because Mr. Ahmed respectfully approached the Court seeking permission to train employees in the Philippines, the Government struck back with a vengeance suggesting shady financial transfers when, in fact, those transfers were made to family members or charities. Their motion now seeks to revoke his passport, prohibit travel abroad, and to require vigilant accounting of all monies that he sends to family members overseas, as well as other draconian sanctions. The Government's request did not come as a result of any issues or alarms triggered by his Ohio probation officer, nor did they arise out of any questionable activity during his 2-1/2 years of probation. The Government's motion seeks harsh changes to someone who has done it right for 2 ½ years and has been compliant with all general and special conditions of probation.

### Conclusion

Mr. Ahmed's father and mother and many family members live in African countries. Nieces and nephews struggling to improve their lives through education look to Mr. Ahmed to assist them in achieving their goals and dreams. He has paid hundreds of

thousands in federal and local taxes since being placed on probation, yet those good deeds are ignored in the quest to strip him of many earned privileges of the past. If the Government had one shred of information that funds were going from Mr. Ahmed to Al Shabab or other terrorist groups operating in Africa, they would have been back in this Court in a heartbeat seeking to revoke his probation.

Mr. Ahmed is willing and committed to provide more specific and itemized accountings to the Court going forward, however, to ask him to provide that information since January 1, 2019 would be burdensome. Because of the apparent sanctions for reaching out and helping extended family members in impoverished countries, Mr. Ahmed is now reconsidering future help for his loved ones, including his parents.

Mr. Ahmed has no objection to the Government's requested condition that he provide an itemized accounting to his probation officer of all monies to be sent outside the United States in the future, which would include the relationship of the recipient to Mr. Ahmed, the purpose behind the gift, and any other information requested by the Court.

There has not been a single fact justifying this wholesale modification of an order issued in 2017 which has worked perfectly well for 2-1/2 years. When the Court approved travel to Mecca, Mr. Ahmed left the country and returned exactly as directed and approved by the Court. When he applied for travel for business purposes last year and that request was denied, even though he had a passport, he honored and respected the Court's order and did not seek out business opportunities in other countries. He would never leave the country, even with a passport, and violate the Court's orders and trust in him. This past June, when he sought the Court's permission to travel to the Philippines for business purposed, it was fully approved by his Ohio probation officer. If a probation officer approves business expansion beyond the borders of the United States, and a defendant has historically been in full compliance of all orders, one would expect that he could travel even though he was bitterly disappointed by the Court's denial of his request to travel to train employees, he has honored and respected that order. To now modify

7758920.1    5

conditions imposed 2 ½ years ago is unfair to him and his family.

There may be instances in the future where Mr. Ahmed may re-petition the court to travel overseas. Should he lose a family member such as his mother or father or siblings, there is a potential that he may return to the Court and request permission to travel. There may be instances in the future relating to his business expansion to the Philippines where we seek approval to travel for shorter visits. The Government's crippling litany of punitive sanctions such as surrender of his passport, outright prohibition of out-of-country travel, and other severe restrictions, given the absence of even a single violation of his probation conditions in 2 ½ years, should be rejected.

RESPECTFULLY SUBMITTED this 24th day of July, 2019.

JONES, SKELTON & HOCHULI, P.L.C.

By: /s/ A. Melvin McDonald
A. Melvin McDonald
Attorneys for Defendant Sharmarke Ahmed

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July 2019, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

By /s/ Diana Weeks